**PROBATE OF AN UNREVOKED, MUTILATED WILL.**

Probate Court of Tuscarawas County.

### IN RE: WILL OF NATHANIEL MILLER.

*Wills—Unrevoked Will—Mutilated before Death of Testator Through Neglect—Can be Probated if Missing Parts can be Supplied.*

1. A paper in seven distinct pieces, found in a decedent's inside coat pocket after his death, can not be admitted to probate as a spoliated will, even if one piece is missing, under the provisions of Section 10543, General Code, if it is shown that it became in such a condition from being pocket worn, before testator's death.

2. Where the signatures of the witnesses to a will are partially obliterated through the neglect of the testator in preserving the instrument, the will can be admitted to probate if the witnesses can identify the portion of the signatures remaining, and the will was not legally revoked or cancelled.

3. Where a material clause in a will becomes so obliterated before testator's death, through his neglect, that it **can no longer be** read in full, the part missing must be supplied by competent evidence before the will can be admitted to probate.

.*C. W. Ferrell*, for proponents.

LAMNECK, J.

This is a proceeding to probate an instrument in writing, purporting to be the last will and testament of Nathaniel Miller, deceased. When the instrument was filed on March 8, 1926, it was in seven distinct pieces which were parts of a single sheet of paper written on both sides. After the pieces were assembled and united together, it was discovered that one piece was missing leaving the introductory clause in the following form:—

LAST WILL AND TESTAMENT.

"The Last Will and Testa
of Jefferson Township
I, the said Nathaniel
age, sound and disp          "Piece missing"
make and declare t
will and testament"

Then follows testamentary disposition of the testator's property in complete form, except a bequest to one, Elma Williams, which is partially obliterated. All that remains of the amount of the bequest are the figures $25 and immediately following is a hole in the paper. Following the tes-

tator's signature, which appears on the opposite side of the paper, is the atteslation clause, part of which is missing, leaving it reading as follows:—

"Signed, sealed and acknowledged by Nathaniel Miller as and for his last will and testament in our presence and subscribed and attested by us as witnesses in his pres and in the presen

Eli J. Mill                                    "Piece missing"
Witness G. V. S.

The instrument was written and executed on Nov. 13, 1920.

It is shown by the evidence that the testator carried it in his inside coat pocket, from the time it was written until his death, on March 3, 1926.   Due to being pocket worn, it had fallen apart. When it was removed from the coat pocket it was in the condition previously described.

The first question to be determined is whether this is a spoliated will, which could be admitted to probate under the provisions of Sction 10543, G. C., which reads as follows:—

"The probate court may admit to probate a last will and testament, which it is satisfied was executed according to the provisions of law in force at the time of its execution, and not revoked at the death of the testator, when such original will was lost, spoliated or destroyed, subsequent to the death of such testator, or after he became incapable of making a will by reason of insanity."

Since this instrument became in the condition in which it was found prior to the testator's death, it could not be admitted to probate as a spoliated will under this section of the statutes.

To be valid, a will must be in writing, signed at the end by the party making it, and be attested and subscribed in the presence of the testator by two or more competent witnesses, who saw the testator subscribe, or heard him acknowledge it.   (Section 10505, G. C.)

To attest a will is to know that it is such an instrument, and not merely that the signature is that of the testator. Both of the witnesses testified that the testator acknowledged the instrument to be his will in their presence, and that they saw him sign his name at the end thereof. It can, therefore, be readily seen that the statute is satisfied as to proper attestation in this case.

The statute, however, not only requires attestation, but

it also requires that the witnesses subscribe their names in the presence of the testator.

To subscribe a paper published as a will, all that is necessary is for the witnesses to write their names on the will for the purpose of identification, and if attestation has been completed in addition, the will should be admitted to probate, if the other essential elements are present. The question then arises whether the words "Eli J. Mill" the part of the signature of Eli J. Miller, remaining on said will, and the letters "G. V. S." the part of the signature of G. V. Schwab, remaining on said will, satisfies the statute when the witnesses testified that they had signed their names in full.

Usually, a subscribing witness signs his name boldly with pen and ink and that is what was done in this case. But that is not altogether essential to a valid signature. A witness may lawfully subscribe a will by a mark, or by initials; and even by a stamp if he is illiterate. (See Schouler, on Wills, Section 331.) The only thing that is necessary, is that the witness should have intended a full and deliberate act of legal attestation, and to have performed by his own hand a subscription accordingly.

Since the witnesses could identify that portion of their signatures remaining, the court is of the opinion that the statute is satisfied as to subscription.

The next question to be determined is whether this will was revoked or cancelled within the meaning of the statute.

The statute expressly provides that "a will may be revoked or cancelled by the testator tearing, cancelling, obliterating or destroying it, or by some person in his presence, or by his direction, or by some other will or codicil, in writing," etc. (Section 10555 G. C.). There is no evidence here that the testator had done any of the foregoing with the intention of revocation or cancellation. An intention to destroy must be carried out in one of the ways enumerated by the statutes.

It has been held that the finding of a will among worthless papers, in an insecure place, while the valuable papers of a testatrix were kept by her in a place of greater security, has been held to be evidence of inattention and carelessness about the instrument, and perhaps of abandonment, but not evidence of destruction of the will within the meaning of the statute. (See *Hoitt* v. *Hoitt*, 3 Atl. 604).

Likewise, it would follow that the careless way in which the testator kept this instrument was not sufficient to show revocation or cancellation as required by Section 10555, General Code, even though it had fallen apart and one piece was missing.

The last question to be determined is whether the will can be admitted to probate in its present form and if not, whether the missing parts can be supplied by evidence.

It is well established by the weight of authority that, if a will is to be admitted to probate, it must be a will in the form and condition in which the will was when originally executed and witnessed, and if a part is missing and can not be proved, probate should be denied.   (See *Curtis' Will,* 119 N. Y. Sup. 1004.)

It is immaterial, whether the part of the introduction which is missing is supplied or not, because it is not essential to a valid instrument and does not affect testamentary disposition.   Likewise, it is not essential that the attesting clause be supplied because it is not necessary to have this written in a will to make it valid, providing of course, the witnesses' signatures are on the instrument and they can testify to attestation as prescribed by statute, which they did in this case.

It has, also, been held that a will with erasures in it, made after it is attested and witnessed, can not stand as the will of a testator, but the will in its original state, without the erasures, if it can be established, can be admitted to probate.   (See *Simrell's Estate,* 154 Pa. St. 604) ; (*Giffin* v. *Brooks,* 48 O. S., 211.)

It appears from the instrument itself that the bequest to Elma Williams is incomplete for the reason that the amount of the bequest was at a point on the paper where it was folded two ways.   From the wear in the testator's pocket, it became partially obliterated.

The scrivener testified that the bequest was $250.00 when originally written.   This appears to be plausible for the reason that no other specific bequest is over $500.00. The one preceding is $500.00 and the succeeding one is $250.00.

The court believes this is sufficient evidence to establish the amount of the bequest, as $250.00.

It is therefore the order of the court that the instrument be admitted to probate and that the bequest made to Elma Williams be recorded as $250.00.